UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: Request from the United Kingdom Pursuant to the Treaty Between the Government of the United States of America and the Government of the United Kingdom on Mutual Assistance in Criminal Matters in the Matter of Dolours Price | M.B.D. No. 11-MC-91078 |

**AFFIDAVIT OF CLIFFORD M. KUHN**

I, Clifford M. Kuhn, being duly sworn, state as follows:

1. I am an Associate Professor in the Department of History at Georgia State University, and past president of the Oral History Association, the national professional organization of oral historians.

2. I have been a practitioner of oral history for over thirty years, and have been associated with numerous award-winning and highly acclaimed projects.

3. I am alarmed by the recent news that federal prosecutors have issued subpoenas to Boston College to gain access to oral history interviews, where the people interviewed had been assured confidentiality and that the interviews would be sealed until after their deaths. This development has the potential to set an ominous precedent, not only for Boston College but for the entire field of oral history.

4. Trust and rapport are at the very core of the oral history enterprise. Building trust begins even before the interview commences, when the two parties in an interview discuss the interview and its potential usages. This is known as the process of informed consent. Part of this process entails the narrator being given the opportunity to seal the interview, usually for a

specified time period, or to otherwise restrict access to the interview.  The reason for this protocol is to foster candor and openness in the interview itself, so as to most fruitfully and fully enhance the historical record.

5. Failure to offer and to guarantee such restrictions can easily lead to self-censorship during the interview, and accordingly a much diminished value of the interview.  It can even result in a refusal to take part in the interview process altogether.  Furthermore, if promises by a repository are not kept to narrators, there well might be a damaging ripple effect on potential future oral history interviews and projects.

6. Honesty and trust are embedded throughout the Oral History Association's Principles and Best Practices, from the pre-interview stage, to the interview itself, to what happens after an interview is conducted and processed.  As I understand the situation, the subpoenas for the Boston College interviews would constitute a real breach of the relationship of trust and confidence established between the archive and the narrators.

7. But the case has implications well beyond Boston College.  Oral history has proven to be a vital means of chronicling the dimensions of war, violence and trauma in the contemporary world.  If potential narrators fear reprisals because of interviews which are "leaked" or promises which are broken, they will be far less likely to take part in such activities, and as a result we all will be impoverished.  I fear the Boston College episode could snowball and have a genuinely chilling effect on oral historical scholarship

Signed under the pains and penalties of perjury.


Dated: June 2, 2011                     /s/ Clifford M. Kuhn
                                        Clifford M. Kuhn