UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: Request from the United Kingdom Pursuant to the Treaty Between the Government of the United States of America and the Government of the United Kingdom on Mutual Assistance in Criminal Matters in the Matter of Dolours Price | M.B.D. No. 11-MC-91078 |

## MOTION OF TRUSTEES OF BOSTON COLLEGE
## TO QUASH NEW SUBPOENAS

While a Motion to Quash remains pending before this Court, the Government has served Trustees of Boston College and two of its representatives new subpoenas to produce additional confidential interview materials gathered as part of the Belfast Project. Pursuant to F.R. Crim. P. 17(c)(2), which provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive," this Second Motion to Quash addresses the new subpoenas.

**Procedural background.**

The first set of Commissioner's Subpoenas, dated May 2, 2011, were directed to the John J. Burns Library at Boston College, Robert K. O'Neill, the Burns Librarian, and Boston College University Professor Thomas E. Hachey, and were served on the named recipients on May 5, 2011. Boston College, on its own behalf and on behalf of Dr. O'Neill and Professor Hachey (collectively, "Boston College"), filed a Motion to Quash those subpoenas on June 7, 2011 (D. 5). The Government filed its Opposition to the Motion to Quash and a Motion to Compel on July 1, 2011 (D. 7), and, with leave of Court, Boston College filed its Memorandum in Reply to the Government's Opposition and in Opposition to the Government's Motion to Compel on

July 15, 2011 (D. 10). The original Motion to Quash filed by Boston College and the Motion to Compel filed by the Government are pending before this Court.

A second set of subpoenas, each dated August 3, 2011, were served and by agreement accepted by counsel for Boston College on August 4, 2011. One subpoena was directed to the Trustees of Boston College and the Burns Library, and one each was directed to Dr. O'Neill and Professor Hachey. The new subpoenas, like the earlier ones, state that they were issued pursuant to the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, 18 U.S.C. § 3512, and this Court's March 31, 2011, Order (D.3), which is under seal. The information sought in the second subpoenas that are the subject of this second Motion to Quash is described in the subpoenas as follows:[*]

1. Original audio and video recordings of "any and all interviews containing information about the abduction and death of Mrs. Jean McConville."

2. Written transcripts, summaries, and indices of such interviews.

3. Records that describe the arrangement and circumstances of the recordings and the chain of custody of the recordings.

The subpoenas directed production no later than August 17, 2011.

---

[*] A fourth category of materials sought by the second subpoenas is documents that describe the disposition and current location of any recordings or other records responsive to the first three categories that were in the possession of Boston College on or before May 3, 2011, but are no longer in its possession. Because no such recordings or other records left the possession of Boston College since May 3, 2011 (other than those produced to the Government in response to the first subpoenas), there are no documents responsive to this category of materials.

**Factual background.**

The circumstances that relate to the materials sought by the first subpoenas are set out in Boston College's original Motion to Quash (D. 5), at pp. 3-7, and apply equally to the second subpoenas.

In addition, the second subpoenas disclose, for the first time, that the subject of the investigation is the McConville case. Prior to these subpoenas, the subject of the investigation was known only to the Government and the Court, through the submission to the Court of the sealed Application [D. 1] for an order authorizing the issuance of subpoenas, and sealed memorandum in support of that Application [D.2].

**Argument.**

As set out in its original Motion to Quash (at 7-8), the First Circuit established in *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998), a three-part test for determining whether, and to what extent, to enforce a subpoena for the compelled disclosure of academic research materials: "[i]nitially, the . . . [party seeking the information] must make a prima facie showing that . . . [its] claim of need and relevance is not frivolous"; after that burden is met, "the burden shifts to the objector to demonstrate the basis for withholding the information"; the Court then balances the "need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan" (citations omitted).

**I.  THE SECOND SUBPOENAS SHOULD BE QUASHED FOR THE SAME REASONS THE FIRST SUBPOENAS SHOULD BE QUASHED – INDEED, THE REASONS FOR QUASHING THE SECOND SUBPOENAS ARE EVEN MORE COMPELLING.**

The *Cusumano* balancing test favors quashing the second set of subpoenas for the same reasons presented in Boston College's original Motion to Quash (at 8-15). Indeed, the balance is

even more strongly in favor of quashing the second set of subpoenas. The first subpoenas sought confidential interview materials from only two interviewees, Brendan Hughes and Dolours Price. Because Brendan Hughes had died before the Government subpoenaed his interview materials, those materials were no longer subject to a promise of confidentiality under the terms of his donation of those materials to Boston College (Attachment 2 to the Affidavit of Robert K. O'Neill (D. 5-6)), and Boston College produced them without objection.

The second subpoenas seek confidential interview materials from all Belfast Project interviewees whose interview materials contain information about the McConville case. For the reasons described below, Boston College does not know how many Belfast Project interviewees that might be, but it could be many. Compelled disclosure of such materials therefore would violate the confidentiality – and potentially prejudice the safety – of many more individuals than Dolours Price, whose materials alone are the subject of Boston College's original Motion to Quash.

In addition, the fact that Dolours Price was an interviewee of the Belfast Project and that her interview materials are located in the Burns Library Archives are facts that had been disclosed in the public media. The identity of all of the other Belfast Project interviewees who are still living has remained strictly confidential. The disclosure sought by the second subpoenas is in that way even worse, because the first subpoenas only involved disclosure of the identity of a living interviewee whose name and involvement in the Belfast Project were no longer confidential.

In addition, the production burden imposed on Boston College by the second subpoenas is substantial, and is different from the burden imposed by the first subpoenas. The production burden of the first subpoenas has been resolved by an agreement between the Government and

Boston College that narrows the scope of the materials sought in ¶¶ 2 and 4 of the first subpoenas.

The second subpoenas impose a separate, and additional, production burden on Boston College, compared to the first subpoenas. The second subpoenas would require the university to perform a detailed analysis of all the Belfast Project interview materials to ascertain if they contain information "about the abduction or death of Mrs. Jean McConville." The volume of work required to undertake that analysis, and to make determinations about what might constitute such information, would impose a substantial burden on Boston College.

The Government may respond that Boston College has in the alternative the option of turning over all the Belfast Project interview materials, so that the Government (or law enforcement officials in the United Kingdom) can make those determinations. If that offer were made, Boston College would not be in a position to accept it. The university is obligated to maintain the confidentiality of the Belfast Project materials, and could not release the full interviews without violating its obligation. In its original Motion to Quash (at 16), which addressed only the interview materials of Dolours Price, Boston College asked the Court to require the Government to specify the subject matter of the UK investigation, and further requested that, once the Government did so specify, the Court either allow Boston College to review the Dolours Price interview materials to determine how much of them relates to the subject matter of the investigation, or undertake that review itself *in camera*.

While the university's original Motion to Quash remains pending, the Government has now voluntarily disclosed in the second subpoenas that the subject matter of the investigation is the McConville case. Because the Government now seeks in the second subpoenas information about that case from the interview materials of all of the Belfast Project interviewees, Boston

College understands that it cannot reasonably ask the Court to undertake an *in camera* review of interviews of more than 20 interviewees.  The transcripts of the Brendan Hughes interviews, which have been produced to the Government, amount to more than 375 pages, which is an indication of the volume of material in the other interviews that would need to be reviewed in response to the second subpoenas.  The burden of the new subpoenas therefore falls solely, and unreasonably, on Boston College.

In the cover letter to counsel for Boston College transmitting the new subpoenas, the Assistant United States Attorney asserted that:

> "the information produced to date -- including the detailed indices, and the fact that only 26 interviews were conducted -- have made clear that producing the information requested in the attached subpoenas would not be unduly burdensome.  There is a limited universe of materials to be searched, the materials are indexed and appear to be easily searchable, and the materials can be readily produced.

It is correct that the transcripts of the interviews of Brendan Hughes that Boston College has already produced, without objection, to the Government in response to the first subpoenas did contain indices.  But neither the transcript nor the index was prepared by the staff at the Burns Library, and Boston College has no ability to determine the completeness or dependability of the Hughes indices or any other indices that exist for other interview materials.  Nor does Boston College know whether the tapes and transcripts it holds are "easily searchable" by any currently available computer-assisted or other means.  The Government's second subpoenas therefore impose an unreasonable burden on Boston College that the first subpoenas, which were limited to the Dolours Price interview materials, did not impose.

## II. THE DISCLOSURE IN THE SECOND SUBPOENAS OF THE LIMITED SUBJECT MATTER OF THE INVESTIGATION PROVIDES NEW SUPPORT FOR QUASHING OR LIMITING THE FIRST SUBPOENAS.

The Government discloses in the second subpoenas, for the first time, that the investigation seeks information regarding the McConville case. That disclosure supports one of the objections asserted in Boston College's original Motion to Quash regarding the first subpoenas. Under heading III of the Argument section of that Motion, Boston College contends that the first subpoenas were overbroad on two distinct grounds of overbreadth. One of those grounds related to ¶¶ 2 and 4 of the first subpoenas. That ground has been resolved by subsequent agreement of the Government and Boston College to narrow the materials sought by those paragraphs.

The second ground has not been resolved, and it is that ground that is buttressed by the disclosure in the second subpoenas that the subject of the investigation is the McConville case. Boston College set out that second ground in its original Motion (at 15), where it argued that, by seeking the tape recordings and transcripts of "*any and all* interviews of . . . Dolours Price [italics added]," the subpoenas were not appropriately tailored to whatever the purpose of the investigation was. Boston College further noted in it its original Motion (*id*.) that the papers that described those purposes had been sealed at the Government's request, and that as a result Boston College was unable to present with more specificity in what ways the subpoenas overreach. Now that the Government has disclosed in its second subpoenas that the investigation seeks information about the McConville case, it is clear that by seeking "any and all" of the interview materials with Dolours Price, not just those that contain information about the McConville case, the first subpoenas are by definition overbroad.

As a result, because of the new information disclosed by the Government in the second subpoenas, at a minimum the first subpoenas should be limited to those portions of the Dolours Price interview materials that disclose information about the McConville case.

**Conclusion.**

For the reasons stated in this motion, Boston College requests that the Court quash both the Commissioner's subpoenas dated May 2, 2011, and those dated August 3, 2011, directed to the Trustees of Boston College, Burns Library at Boston College, Professor Hachey, and Dr. O'Neill.  As to the subpoenas dated May 2, 2011, Boston College alternatively requests that the Court direct a process to narrow the subpoenas so that only information about the McConville case need be produced.

By its attorneys,

/s/  Jeffrey Swope
Jeffrey Swope (BBO #490760)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, Massachusetts 02199-7613
(617) 239-0100
jswope@eapdlaw.com

Dated: August 17, 2011

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 17, 2011.

/s/ Jeffrey Swope