UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

IN RE: Request from the United Kingdom            )
Pursuant to the Treaty Between the                )
Government of the United States of                )
America and the Government of                     )   M.B.D. No. 11 mc 91078-JLT
the United Kingdom on Mutual                      )
Assistance in Criminal Matters in                 )
the Matter of Dolours Price                       )

### Government's Opposition to Motion to Quash New Subpoenas and Motion to Compel

The United States of America, by and through Assistant United States Attorneys John T. McNeil and Todd F. Braunstein, respectfully submits this opposition to the *Motion of Trustees of Boston College to Quash New Subpoenas* [D.12] filed by the Trustees of Boston College on behalf of themselves, the Boston College John J. Burns Library, Robert K. O'Neill, the Director of the John J. Burns Library, and Thomas E. Hachey, Professor of History and Executive Director of the Center for Irish Studies at Boston College ("Respondents"). The government also requests that the Court enter an order compelling the Respondents to immediately produce the subpoenaed material.

The procedural history in this matter is set forth in the *Government's Opposition to Motion to Quash and Motion for an Order to Compel* [D.7 at 2-5]. Since that filing, on August 3, 2011, Assistant U. S. Attorney Todd Braunstein, acting as Commissioner pursuant to an order issued by this Court [D.3], issued three additional subpoenas to the Respondents.[1] As noted in the Respondents' motion, those subpoenas seek certain information in the possession or control

---

[1] The subpoenas issued by the Commissioner are being filed separately under seal, along with the other exhibits to this memorandum. *See* Exhibit 1 (under seal).

of the Respondents related to the abduction and murder of Mrs. Jean McConville.  These subpoenas seek information in addition to the subpoenas issued on May 3, 2011.

The Respondents have moved to quash these new subpoenas. [D.12].  As with their first motion to quash, they argue that the Court should engage in a balancing analysis, weighing the United Kingdom's ("UK")  need for the information in its criminal investigation against Boston College's interest in shielding evidence related to the abduction and murder of Mrs. McConville. [*Id*. at 3-4].  The Respondents also argue that the new subpoenas impose an unreasonable burden upon them. [*Id*. at 4-6].   They also claim, taking an inferential leap which is understandable but incorrect, that the UK investigation is limited to only the McConville abduction and murder, and that both the original subpoenas and the new subpoenas should be narrowed by the Court, so that the Respondents are only required to produce narrow segments of their archive related to Mrs. McConville. [*Id.* at 7-8].

For the reasons set forth in the *Government's Opposition to Motion to Quash and Motion for an Order to Compel* [D.7 at 2-5], and *Government's Supplemental Opposition to Motion to Quash* [D.13], this Court should reject the Respondent's renewed call to balance the UK's interest in obtaining this evidence against the Respondent's interest in concealing it.  The government incorporates those arguments by reference and does not repeat them here.  While not so required under applicable law, the government will also submit under seal and *ex parte,* supplemental information about the UK investigation which directly addresses the need for the information sought in the subpoenas.

The Court should also reject the Respondents' claim that the subpoenas impose an unreasonable burden on them.  First, the Court has no authority to quash an MLAT subpoena on

this basis. *See Government's Supplemental Opposition to Motion to Quash.* [D.13]. Second, as set forth below, there is a limited universe of materials to be searched, the materials are transcribed and indexed and appear to be easily searchable, and the materials can be readily produced. Moreover, despite their unique ability to do so, the Respondents have chosen to do nothing to accurately gauge the effort necessary to comply with the subpoenas.

In response to the first set of subpoenas issued in May 2011, the Respondents produced documents indicating that there were a total of 26 interviews conducted in connection with the Belfast Project (including Hughes and Price). *See* Exhibit 2 (under seal). In addition, as demonstrated by the Hughes interview and related material which has already been produced, it is evident that each Belfast Project interview was transcribed and a detailed word index was created for each transcript. *See* Exhibit 3 (sample index and transcript from the Hughes material)(under seal). It therefore is a simple matter to manually search each index for references to specific persons, events and places (such as "McConville", "disappearances", or "kidnapping"). Moreover, the simple process of scanning the transcripts and then word searching those scanned documents is a routine and simple means of reviewing the material in the archive. Thus, based on the information produced to date, it is apparent that producing the information requested in the second set of subpoenas would not be unduly burdensome.[2]

The Respondents' assertion that the subpoenas are unduly burdensome must be rejected, not only because it lacks credible factual support, but because it fails to acknowledge that the

---

[2] While the government has not been provided to complete list of those persons interviewed for the Belfast Project, it can be presumed that a significant number of those 26 persons interviewed were Loyalist paramilitary members who would have no information about the McConville abduction and murder. Thus, significantly fewer than the 24 remaining interviews would need to be reviewed in response to the second set of subpoenas.

Respondents are uniquely poised to undertake the limited work necessary to respond. In claiming that the burden of searching alphabetized indices of fewer than 24 transcribed interviews is unreasonable, the Respondents assert that "Boston College [does not] know whether the tapes and transcripts it holds are 'easily searchable' by any currently available computer-assisted or other means." [D.12 at 6]. Such a response, from a chaired historian and the director of a distinguished college library, begs credulity.[3] The task of searching this material would be fairly straightforward for a first year paralegal, much less a tenured historian and a library director.[4] Moreover, this response reflects that the Respondents have failed to investigate precisely what kind of a burden responding imposes. Their failure to investigate and demonstrate the extent of any burden is sufficient basis alone for rejecting their motion to quash.

The Respondents also argue that the transcripts and indices of the Belfast Project interviews were not prepared by "the staff at the Burns Library," and "Boston College has no ability to determine the completeness or dependability of . . . indices that exist for other interview

---

[3] *See* D.5 at Exhibit 2 (Affidavit of Thomas E. Hachey: "I am a chaired University Professor of History at Boston College and Executive Director of Boston College's Center for Irish Programs"; D.5 at Exhibit 6 (Affidavit of Robert K. O'Neill: "I am the Burns Librarian of the Honorable John J. Burns Library of Rare Books and Special Collections at Boston College"; "The Burns Library preserves over 250,000 volumes, 16,000,000 manuscripts . . . The Burns Library has achieved international recognition in several areas of research, including Irish studies. The Irish Collection at Burns is widely regarded as one of the most comprehensive collections of its kind outside Ireland"; and the Belfast Project "audiotapes of interviews, the transcripts of those interviews . . . were stored in the Treasure Room of the Burns Library at Boston College. The Treasure Room is a secure area, monitored by cameras . . . [and] has state-of-the-art HVAC system and a Halon fire suppressant system.").

[4] Compared to responding to a grand jury subpoena issued to a corporate entity -- which routinely calls for the review and production of tens of thousands of documents -- the search of the Belfast Project materials is light work. Of course, the government would be willing to review the entire Belfast Project material itself, but the Respondents have rejected such an idea. [D.12 at 5].

material." [D.12 at 6].  However, the Respondents fail to mention that Boston College budgeted thousands of dollars for transcription services and the creation of indices for the Belfast Project interview tapes.  *See* Exhibit 4 (initial estimate of $8,000 per year for transcription)(under seal).  Thus, despite paying these sums and placing those written materials in the Treasure Room of an internationally recognized library, the Respondents now claim the transcripts and indices are unreliable.  Moreover, that a chaired professor of history and an internationally recognized library have "no ability to determine the completeness or dependability" of the transcripts and indices is simply not credible.  Even if the Respondents doubt the completeness of the original transcripts, it is a simple process to listen to a recording and follow along in the transcript.

     In its final argument, the Respondents press the Court to narrow the scope of the subpoenas by taking the inferential leap that the UK investigation only seeks material about the McConville abduction and murder; the Respondents claim that if anything is produced, only those portions of the recordings which speak to that event should be included.  [D.12 at 7-8].  While this inferential leap is understandable, it is incorrect. The second set of subpoenas seek information in addition to the complete Hughes and Price interviews; they seek the complete interviews of any interviewee who has provided information related to the McConville matter.  While the government has no obligation under the US-UK MLAT to outline the basis for this request, the Court has ample information from the government's *ex parte* filings to reject both motions to quash and to compel production of the material subpoenaed.

     For the reasons set forth above, the government respectfully requests that the motions be denied and the Court enter an order compelling the immediate production of the subpoenaed

material.

                                        Respectfully submitted,

                                        CARMEN M. ORTIZ
                                        UNITED STATES ATTORNEY

Date: August 25, 2011          By:    */s/ John T. McNeil*
                                        John T. McNeil
                                        Todd F. Braunstein
                                        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/ John T. McNeil*
                                        John T. McNeil
                                        Assistant United States Attorney