UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
In RE: Request from the United      )
       Kingdom Pursuant to the      )
       Treaty Between the           )
       Government of the United     )
       States of America and the    )
       Government of the United     )
       Kingdom on Mutual            )
       Assistance in Criminal       )
       Matters in the Matter of     )
       Dolours Price                )
                                    )
UNITED STATES OF AMERICA,           )
             Petitioner,            )
      v.                            )
                                    )
TRUSTEES OF BOSTON COLLEGE,         )    MISCELLANEOUS BUSINESS
             Movant,                )    DOCKET
                                    )    NO. 11-91078-WGY
JOHN T. McNEIL,                     )
             Commissioner,          )
                                    )
ED MOLONEY, ANTHONY McINTYRE,       )
             Applicants for         )
             Intervention.          )
                                    )
```

FINDINGS AND ORDER

YOUNG, D.J.                                           January 20, 2012

In making its decision as to the enforcement of the Commissioner's second subpoena, the Court has now thoroughly reviewed the transcripts of 176 interviews of the 24 interviewees identified as most likely to have information responsive to the subpoena. The Court has made its review pursuant to its opinion issued December 16, 2011, United States v. Trustees of Boston College, --- F. Supp. 2d. ---, 2011 WL 6287967 (D. Mass. Dec. 16,

2011), and the balancing procedure explained from the bench, see Transcript of Hearing, ECF No. 35, Dec. 22, 2011, sensitive that the requesting state desires the subpoena to be read expansively. The Court has done so.

Even so, only six interviewees even mention the disappearance of Jean McConville that constitutes the target of the subpoena. One interviewee provides information responsive to the subpoena. Another proffers information that, if broadly read, is responsive to the subpoena. Three others make passing mention of the incident, two only in response to leading questions. It is impossible to discern whether these three are commenting from personal knowledge, from hearsay, or are merely repeating local folklore. In context, the sixth interviewee does nothing more than express personal opinion on public disclosures made years after the incident. The Court concludes that the full series of interviews of the five interviewees first mentioned above must be disclosed and that the interview with the sixth need not be produced.

Morever, two other interviewees mention a shadowy sub-organization within the Irish Republican Army that may or may not be involved in the incident (the time period and the geographical location within Northern Ireland are generally congruent with the incident). Still, the references made are at such a vague level of generality that it is virtually inconceivable to this Court that the law enforcement authorities within the requesting state

do not already have this information. The Court is mindful of both the delicate balancing demanded by a subpoena that may infringe on academic freedom, and the Court's natural reticence to substitute its own investigatory judgment for that of knowledgeable law enforcement officials. See Trustees of Boston College, --- F. Supp. 2d ---, 2011 WL 62879667; Transcript of Hearing, ECF No. 35, Dec. 22, 2011. Examined under the magnifying glass of "heightened scrutiny," these transcripts might not be produced to domestic law enforcement absent a specific showing of further need by the government. See In re Special Proceedings, 373 F.3d 37, 45 (1st Cir. 2004) ("[D]isclosure may be denied where the same information is readily available from a less sensitive source" (citing Cusumano v. Microsoft Corp., 162 F.3d 708, 716-17 (1st Cir. 1988)). Under the circumstances of this case, the Court determines that the two specific interviews where such mention is made (together with sufficient identifiers to ascertain the identity of the interviewees) shall be produced but the full series of interviews of these two interviewees need not be produced.

No other materials from Boston College's archive need be produced in response to this second subpoena and in view of the paucity of information unearthed after extensive review by this Court, it declines to review the "very few" audiotapes not yet transcribed.

A sealed appendix to this Order identifies the specific

3

materials to which it applies.

ACCORDINGLY:

1. On or before the third business day after the United States Court of Appeals lifts the stay of December 30, 2011 on the materials produced in response to the first subpoena, Boston College shall produce to the Commissioner:

   a. The original tape recordings of any and all interviews designated in the sealed appendix.

   b. Any and all written documents, including but not limited to any and all transcripts, relating to any and all tape recordings of any and all interviews designated in the sealed appendix.

   c. Any and all written notes created in connection with any and all interviews designated in the sealed appendix.

   d. Any and all computer records created in connection with any and all interviews designated in the sealed appendix.

2. This Court at the same time will turn over to the Commissioner the materials it has been reviewing in camera which have been designated in the sealed appendix. The Commissioner shall give receipt for such materials.

3. The Commissioner shall hold such materials in

confidence and shall cause to be made (at government expense) copies of the original materials turned over by Boston College (tape for tape and transcript for transcript), save only that transcripts which have already been duplicated need not again be copied. The complete set of the copied materials shall be returned to Boston College for its archives.

4. The Commissioner shall report to the Court the copying and return of the copies for archiving.

5. This done, the Commissioner may turn over the materials this Court has designated as responsive to second subpoena to the requesting state.

6. This Court will retain for 60 days *in camera* the materials it has declined to order produced. Should no appeal eventuate in that time, the Court will return all such materials to Boston College.

This constitutes the Court's final order in this matter.[1]
SO ORDERED.

WILLIAM G. YOUNG
DISTRICT JUDGE

---

[1] Naturally, the Court presumes full compliance by the parties with the Court's order. It retains jurisdiction to assure such compliance.

5